**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER CORBIN and RICH SERONICK Individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:23-cv-12807-IT |
| MARC SALKOVITZ, PAM SALKOVITZ, and HILCO MERCHANT RESOURCES, LLC | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT HILCO MERCHANT RESOURCES, LLC'S
MOTION TO TRANSFER VENUE**

This class action lawsuit arises from going out of business sales conducted at Christmas Tree Shops, LLC ("Christmas Tree") retail locations in Massachusetts as part of Christmas Tree's bankruptcy filing. Plaintiffs claim that they, and the putative class they seek to represent, worked at these stores during the liquidation and ultimately were not paid wages, accrued vacation, and allegedly promised retention bonuses. Christmas Tree's bankruptcy is pending in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). In addition, on July 15, 2023, a complaint (the "WARN Action") was filed in the Delaware Bankruptcy Court seeking damages for the alleged violations by Christmas Tree of the Worker Adjustment and Retraining Notification Act (the "Federal WARN Act"), 29 U.S.C. § 2101 et seq., and the Millville Dallas Airmotive Plant Loss Job Notification Act (the "NJ WARN Act"), N.J.S.A. § 34:21-1 et seq., and remains pending as adversary case number 23-50446 (TMH).

This case should be transferred to the United States District Court for the District of Delaware so it can be referred to the Delaware Bankruptcy Court where it belongs. Defendant

1

Hilco Merchant Resources, LLC ("Hilco") contracted with Christmas Tree to assist in its going out of business sales. Hilco's engagement was authorized and approved by order of the Delaware Bankruptcy Court. In fact, in its orders authorizing Christmas Tree to assume its agreement with Hilco and conduct the going out of business sales, the Delaware Bankruptcy Court "retained jurisdiction" to decide disputes arising out of Hilco's store closing agreement, like this one. Moreover, the plaintiffs in the WARN Action seek relief that overlaps in part with certain of the relief sought in this case. Therefore, a transfer is permissible and appropriate under both 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a), and Hilco's motion to transfer should be granted.

## RELEVANT BACKGROUND

On September 25, 2023, Plaintiffs Christopher Corbin and Rich Seronick filed a Class Action Complaint ("Complaint") against Marc Salkovitz, Pam Salkovitz, and Hilco (collectively "Defendants") in the Superior Court of Plymouth County, in the Commonwealth of Massachusetts, styled *Christopher Corbin, et al. v. Marc Salkovitz, et al.*, Case No. 2383-cv-00717 (the "State Court Action"). (ECF No. 2-1 at 2-9). Hilco timely removed the State Court Action to federal court by filing a Notice of Removal on November 17, 2023. (ECF No. 1).[1]

Plaintiffs were Christmas Tree employees. (*See* Complaint., ¶¶ 1, 3 and 4). Christmas Tree and certain of its affiliates (collectively, the "Debtors") filed Chapter 11 bankruptcy cases before the Delaware Bankruptcy Court, styled as *In re Christmas Tree Shops, LLC, et al.*, Case No. 23-10576-TMH (the "Bankruptcy Cases"). (*See* Complaint, ¶ 12; *see also* ECF No. 2-2 (Christmas Tree's Voluntary Petition for Non-Individuals Filing for Bankruptcy)).

---

[1] Hilco incorporates by reference its Notice of Removal, including the factual assertions contained therein, and the declarations and exhibits attached thereto. (ECF Nos. 1 & 2).

In their lawsuit, Plaintiffs allege that they, and the putative class they seek to represent, have unpaid wages, accrued and unused vacation time, and retention bonuses they claim had been promised to them if they continued working during the going out of business sales that were never paid. They have sued the Salkovitz's, two of Christmas Tree's senior officers, and Hilco, whom, as discussed below, was engaged by Debtors as a "Consultant", which engagement was approved by the Delaware Bankruptcy Court to assist Christmas Tree to conduct the going out of business sales.

In the Bankruptcy Cases, the Debtors, as Chapter 11 debtors-in-possession, obtained entry of a *Final Order (I) Authorizing, on Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims and Encumbrances, and (III) Granting Related Relief* (the "Final Store Closing Order"). (*See* ECF No. 2-4 (Final Store Closing Order)). Under the Final Store Closing Order, the Delaware Bankruptcy Court authorized Debtors to assume an agreement governing inventory disposition (the "Store Closing Agreement") between Christmas Tree and Hilco, whereby Hilco was engaged as a "Consultant" to assist Christmas Tree with its "going-out-of-business sales." (*See* ECF No. 2-5 (Store Closing Agreement), at 36–46).

Hilco's involvement with Plaintiffs, if any, was solely in Hilco's capacity as a Consultant under the Store Closing Agreement. (ECF No. 1 at 5-6). In addition, under the Final Store Closing Order, the Delaware Bankruptcy Court held that under the Store Closing Agreement, Hilco "shall act solely as an independent consultant to the Debtors . . . . and, for greater certainty, [Hilco] shall not be deemed to be an employer, a joint or successor employer, or a related or common employer or payor within the meaning of any legislation governing employment or labor standards, health

3

and safety, or other statute, regulation or rule of law or equity for any purpose whatsoever and shall not incur any successor liability whatsoever." (ECF No. 2-4, at 25, ¶ 48).

The Final Store Closing Order further provides that "the terms and provisions of the Store Closing Agreement shall be binding on the Debtors' creditors (whether known or unknown) . . . and any affected third parties . . . ." (*Id.* at 23, ¶ 44). The Store Closing Agreement, in turn, expressly provides that "[Hilco] shall have no liability to [Christmas Tree's] employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notices of termination or any other liability arising from [Christmas Tree's] employment, hiring or retention of its employees, and such employees shall not be considered employees of [Hilco]."  (ECF No. 2-5, at 38, § C(i)). Christmas Tree further agreed to indemnify, defend and hold Hilco harmless from, among other things, "any liability or other claims . . . asserted by . . . any Store employees (under any collective bargaining agreement or otherwise) . . ."  (*Id.* at 39, § F(i)).

Further the Final Store Closing Order provided that the Delaware Bankruptcy Court "shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order or the Store Closing Agreement . . . ." (ECF No. 2-4, at 27, ¶ 58). In furtherance of this retention of jurisdiction, the Delaware Bankruptcy Court's Final Store Closing Order expressly provides that "[n]o parties or person shall take any action against the Debtors, *the Consultant*, the Closing Sales, or any Landlord, as applicable, until this Court has resolved such dispute." (*Id.*) (emphasis added).

On August 16, 2023, the Delaware Bankruptcy Court converted the Debtors' Chapter 11 bankruptcy cases to Chapter 7 cases ("Bankruptcy Conversion Order"). (*See* ECF No. 2-6 (Bankruptcy Conversion Order)).  As Chapter 7 cases, the Debtors' Bankruptcy Cases continue to be actively administered before the Delaware Bankruptcy Court.

On October 15, 2023, Plaintiff Christopher Corbin submitted a proof of claim with the Delaware Bankruptcy Court (the "Proof of Claim"), wherein he is seeking recovery from Christmas Tree's Chapter 7 estate on what appear to be the very same alleged claims being asserted in the State Court Action. (*See* ECF No. 2-7 (Proof of Claim)).

Adjudication of Plaintiffs' alleged claims against Hilco will require a determination of whether Plaintiffs are precluded from pursuing such alleged claims by the Delaware Bankruptcy Court's Final Store Closing Order for which the Delaware Bankruptcy Court expressly retained jurisdiction to decide. In addition, Plaintiffs' alleged claims against Hilco in the State Court Action necessarily trigger Hilco's contractual right of indemnification from Christmas Tree's bankruptcy estate. Moreover, Plaintiffs' alleged claims in the State Court Action appear to directly overlap with Plaintiff Corbin's concurrent efforts to obtain a distribution from Christmas Tree's Chapter 7 bankruptcy estate. Finally, as noted above, the relief sought through the State Court Action overlaps, at least in part, with the relief sought through the WARN Action, including the payment of certain wages and benefits (in lieu of the notice otherwise required under the WARN Acts), currently pending before the Delaware Bankruptcy Court. Accordingly, Hilco properly removed Plaintiffs' State Court Action to this Court under the bankruptcy-removal statute, 28 U.S.C. § 1452,[2] and now appropriately seeks to transfer this action to the United States District Court for the District of Delaware (i.e., the district in which the Delaware Bankruptcy Court sits).

---

[2] Hilco also properly removed this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (ECF No. 1).

## ARGUMENT

### A. The Requested Transfer is Appropriate Under 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a).

Pursuant to Federal Rule of Bankruptcy Procedure 7087, a court may transfer the venue of an adversary proceeding (or any part thereof) to another district pursuant to 28 U.S.C. § 1412. This case qualifies as an adversary proceeding under this rule because it is "a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452." Fed. R. Bankr. P. 7001(10); *see also* Fed. R. Bankr. P. 9027(g) ("The rules of Part VII [Rules 7001 through 7087 governing adversary proceedings] apply to a claim or cause of action removed to a district court from a federal or state court and govern procedure after removal."). Under 28 U.S.C. § 1412 transfer is permissible when it is "in the interest of justice or for the convenience of the parties."

Similarly, but separately, 28 U.S.C. § 1404(a) provides for the transfer of venue of civil actions "[f]or the convenience of parties and witnesses, in the interest of justice." The decision whether to grant a motion to transfer venue is within the sound discretion of the court. *In re N. Parent, Inc.*, 221 B.R. 609, 630 (Bankr. D. Mass. 1998) (applying 28 U.S.C. § 1412); *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (applying 28 U.S.C. § 1404(a)).

Although authorities are divided on the scope of § 1412,[3] transfer here is appropriate under either § 1404(a) or § 1412 because "the analysis is essentially the same under each," with courts

---

[3] Because 28 U.S.C. § 1412 references transfer of "a case or proceeding under title 11" only, "the authorities are divided on whether § 1412 applies to actions 'related to cases under Title 11,' or only actions 'under Title 11' or 'arising in cases under title 11.'" *New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133, 148 (Bankr. D.N.H. 2009); *City of Liberal, Kan. v. Trailmobile Corp.*, 316 B.R. 358, 361-62 (D. Kan. 2004) (collecting cases); *see also In re N. Parent, Inc.*, 221 B.R. 609, 630 n.19 (Bankr. D. Mass. 1998) (finding that cases which "have held that 'related to' proceedings should be transferred pursuant to 28 U.S.C. § 1404(a). . . . represent the minority view and are generally disfavored"); Fed. R. Bankr. P. 7087 ("On motion and after a hearing, the court may transfer an adversary proceeding *or any part thereof* to another district pursuant to 28 U.S.C. § 1412 . . . ."). As explained above, this action meets both tests because it

employing a "case-by-case consideration of convenience and fairness." *New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133, 148 (Bankr. D.N.H. 2009) (internal quotation marks omitted); *see also In re Lehman Brothers Holdings Inc.*, 594 B.R. 33, 50 (S.D.N.Y. 2018) ("Whether this Court conducts its analysis . . . by applying section 1412 or . . . by applying section 1404(a), is largely inconsequential. . . . [T]he analyses under section 1404 and section 1412 are substantially similar.") (citations omitted). Because § 1412 is "written in the disjunctive, making transfer of venue appropriate *either* in the interest of justice *or* for the convenience of the parties, . . . this statutory provision creates two distinct analytical bases upon which transfer of venue may be grounded." *In re Cosmogony II, Inc.*, No. 22-01682 (ESL), 2022 WL 14929826, *4 (Bankr. D.P.R. Oct. 25, 2022) (quoting *In re Hermitage Inn Real Estate Holding Co., LLC*, No. 19-10214, 2019 WL 2536075, *3 (Bankr. D. Vt. 2019)) (emphasis in *Hermitage*). Courts applying § 1404(a) in cases related to bankruptcy proceedings have found that "the 'interest of justice' component is a 'broad and flexible standard which must be applied on a case by case basis in consideration of promoting 'the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness.'" *In re Lehman Brothers Holdings Inc.*, 594 B.R. at 52 (quoting *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)). Although courts look at a variety of factors when considering motions to transfer venue of adversary proceedings, "the most important factor is whether the venue transfer would promote the economic and efficient administration of the [bankruptcy] estate." *In re Malden Mills Industries, Inc.*, 361 B.R. 1, 10 (Bankr. D. Mass. 2007) (citation omitted); *see also In re N. Parent, Inc.*, 221 B.R. at 630 (same).

---

arises in and is related to Debtors' Bankruptcy Cases, and transfer of venue is appropriate under either § 1412 or § 1404(a).

Crucially, in cases removed from state court pursuant to 28 U.S.C. §1452, such as the present action, "[t]here is a strong presumption in favor of placing venue in the district where the bankruptcy proceedings are pending." *New England Wood Pellet, LLC*, 419 B.R. at 149 (internal quotation marks omitted) (citing *Orthodontic Ctrs. of Tex., Inc. v. Corwin*, No. 06–2595, 2007 WL 173220, at *1 (S.D. Tex. Jan. 18, 2007); *Hohl v. Bastian*, 279 B.R. 165, 177–78 (W.D. Pa. 2002); *In re Vital Link Lodi, Inc.*, 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999)). "The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction, because speedy and economic administration of cases is a paramount consideration in the bankruptcy process." *Id.* at 151 (quoting *In re Vital Link Lodi, Inc.*, 240 B.R. at 19). This is often referred to as the "home court presumption." *See, e.g.*, *Hohl*, 279 B.R. at 177-78 ("In sum, the home court presumption provides that the court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts.") (citing *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 723–24 (Bankr. W.D. Pa. 1982)).

In the present situation, the presumption in favor of the "home court" (i.e., the Delaware Bankruptcy Court) is especially compelling given that this action necessarily implicates the scope and effect of the Delaware Bankruptcy Court's Final Store Closing Order and the express directive therein that no such action should be commenced against Hilco until the Delaware Bankruptcy Court is afforded an opportunity to properly consider and resolve whether the proposed action is precluded by the Final Store Closing Order. (*See* ECF No. 2-4, at 27, ¶58 (wherein the Delaware Bankruptcy Court expressly retains jurisdiction to interpret and enforce the Final Store Closing Order, and provides that "[n]o parties or person shall take any action against . . . the Consultant . . . , until *this Court* has resolved such dispute.") (emphasis added)).

As is well-established, "a bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders . . . ." *Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 947 (Bankr. S.D. Tex. 1995); *see also Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11 Cir. 2012) ("[I]t would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretative whims of a bankruptcy court [or district court] in another district."); *Massey v. Conseco, Inc.*, No. 1:03-CV-1701-LJM-VSS, 2004 WL 828229, *7 (S.D. Ind. Apr. 12, 2004) (wherein court transfers action to "home bankruptcy court" after finding that "[t]he bankruptcy court is best equipped to address this direct challenge to its own orders.").

Accordingly, in situations such as the present—in which a removed or other non-bankruptcy court action necessarily implicates the proper interpretation and enforcement of a prior bankruptcy court order—courts have consistently found transferring such actions to the bankruptcy court's "home district" to be in the interests of justice and, thus, paramount to any competing considerations to the contrary. *See, e.g., City and Borough of Juneau v. Beardsley (In re Fountain Village Development)*, No. J14–90007–GS, 2014 WL 4656506, *5 (Bankr. D. Alaska Sept. 15, 2014) (transferring removed state court action to "home" bankruptcy court in Oregon after concluding that other factors implicating transfer of venue analysis "are outweighed by the Oregon bankruptcy court's interest in interpreting and, if necessary, enforcing its own orders, and the efficiency of having the Oregon court, as the home court, resolve these claims and the intertwined bankruptcy issues."); *Lotham Cassidy LLC v. Ransom*, 428 B.R. 555, 562 (E.D.N.Y. 2010) (finding that transfer of removed action to the bankruptcy court's home district "will ensure supervision by the court most familiar with, and with continuing administrative responsibility for, [the nonparty debtor's] bankruptcy proceedings and, at the same time, ensure that the claims

brought by the plaintiffs will be fairly, efficiently and effectively resolved with minimal practical upset to the ongoing bankruptcy proceedings within which they arise."); *Hacienda Heating & Cooling, Inc. v. United Artists Theatre Circuit, Inc.*, No. 08–0502–PHX–DKD, 2009 WL 8238063, *3 (D. Ariz. Mar. 31, 2009) (transferring putative class action to Delaware bankruptcy court after concluding that the bankruptcy court retained jurisdiction over the matters in dispute and had "unique knowledge" of proceedings within which such matters arose); *In re Kaiser Group Holdings, Inc. v. Squire Sanders & Dempsey LLP (In re Kaiser Group International, Inc.)*, 421 B.R. 1, 19 (Bankr. D.D.C. 2009) (removed state court action transferred to bankruptcy court's "home district" in Delaware after court concludes that "the nature of Plaintiff's claims are such that they are inseparably woven into . . . the actions of the bankruptcy court in Delaware.").

**B.   Plaintiff Corbin's Proof of Claim Filed in the Bankruptcy Cases Further Supports Transfer.**

In addition to the above considerations, Plaintiff Corbin's attempt to assert overlapping claims against Christmas Tree's Chapter 7 bankruptcy estate only reinforces the necessity of transferring this action to the District of Delaware.  Specifically, not only does Plaintiff Corbin's simultaneous pursuit of such recovery illustrate the relative convenience and accessibility of the Delaware Bankruptcy Court, it also underscores the extent to which the instant action is inseparably intertwined with matters traditionally recognized as being within the underlying bankruptcy court's exclusive jurisdiction.  *See generally, Central Virginia Community College v. Katz*, 126 S.Ct. 990, 996 (2006) ("Critical features of every bankruptcy proceeding are the exercise of *exclusive jurisdiction* over all of the debtor's property [and] the equitable distribution of that property among the debtor's creditors") (emphasis added).; *In re E & G Waterworks, LLC*, 571 B.R. 500, 506 (Bankr. D. Mass. 2017) ("Bankruptcy courts have exclusive jurisdiction over matters concerning the liquidation of the estate and the adjudication of claims against it."). The

pending WARN Action, in which the plaintiffs assert claims for severance under New Jersey law and additional wages and benefits, in lieu of the notice otherwise required by the Federal WARN Act and the NJ WARN Act, lends further support to the degree to which the claims asserted in the State Court Action are intertwined with those claims already asserted in the Debtors' Bankruptcy Cases.

### C. Hilco's Right to Seek Indemnification for this Lawsuit from the Bankruptcy Estate Further Demonstrates the Need to Transfer.

Similarly, as referenced above, Plaintiffs' attempt to prosecute the instant action against Hilco triggers Hilco's contractual right of indemnification from and against Christmas Tree's bankruptcy estate under Section F(i) of the Store Closing Agreement, (ECF No. 2-5, at 39), which such right Hilco is necessarily entitled to assert as an administrative priority expense against the bankruptcy estate.  *See generally, Mason v. Official Committee of Unsecured Creditors (In re FBI Distribution Corp.)*, 330 F.3d. 36, 42 (1st Cir. 2003) (if a Chapter 11 debtor-in-possession assumes an executory contract under Bankruptcy Code Section 365(a), any post-assumption claims by the nondebtor counter-party under that contract are treated as administrative priority expenses of the debtor's bankruptcy estate).

In the latter regard, this action again involves a matter traditionally recognized as falling within the underlying bankruptcy court's exclusive jurisdiction. *See, e.g., Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374 (6th Cir. 2001) (to the extent that U.S. Department of Labor sought to recover its "hot goods" claim as an administrative priority expense against the debtor's Chapter 7 bankruptcy estate, the claim had to be filed and adjudicated in the bankruptcy court rather than in a federal district court located outside of the bankruptcy court's home district); *U.S. v. Sterling Consulting Corp. (In re Indian Motorcycle Co., Inc.)*, 261 B.R. 800, 808 (1st Cir. BAP 2001) (determination of bankruptcy estate's administrative tax liabilities was within bankruptcy court's

exclusive jurisdiction and, thus, could not be properly adjudicated by a district court in another federal district).

## **CONCLUSION**

Here, the home court presumption, the language of the Delaware Bankruptcy Court's Final Store Closing Order, and the economic and efficient administration of Christmas Tree's bankruptcy estate all support ultimately litigating this action before the United States Bankruptcy Court for the District of Delaware. Thus, because this action arises in and relates to Debtors' Bankruptcy Cases, and because the interests of justice and convenience of the parties weigh in favor of transferring venue, Hilco's motion to transfer under 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a) should be granted and this matter transferred to the United States District Court for the District of Delaware for further proceedings.

Dated: December 7, 2023                               Respectfully submitted,

*/s/ Steven M. Cowley*
Steven M. Cowley (BBO #554534)
McKenna K. Heath (BBO# 707283)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
Tel.: 857-488-4200
Fax:  857-488-4201
smcowley@duanemorris.com
mheath@duanemorris.com

*Counsel for Hilco Merchant Resources, LLC*

12

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent out to those indicated as non-registered participants on this 7th day of December 2023.

*/s/ Steven M. Cowley*
Steven M. Cowley
