UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER CORBIN and RICH SERONICK, Individually, and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>MARC SALKOVITZ, PAM SALKOVITZ, and HILCO MERCHANT RESOURCES, LLC,<br><br>   Defendants. | Civil Action<br>No. 1:23-cv-12807-IT |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF MARC SALKOVITZ AND PAM SALKOVITZ FOR ORDER (I)
REMANDING PROCEEDINGS TO STATE COURT, OR (II) IN THE ALTERNATIVE,
ABSTAINING FROM HEARING REMOVED PROCEEDINGS**

Defendants Marc Salkovitz ("Marc") and Pam Salkovitz ("Pam," and together the "Individual Defendants") hereby submit this memorandum of law in support of their motion (the "Motion") pursuant to 28 U.S.C § 1447(c) and 28 U.S.C. § 1452(b), and Fed. Bankr. P. 9027(d). The Motion seeks an order remanding these proceedings to the Superior Court of the Commonwealth of Massachusetts for Plymouth County (the "Superior Court"), initiated by a civil action styled as Christopher Corbin et el. v. Marc Salkovitz et al., Civil Action No. 2383CV00717 (the "Superior Court Action"), for lack of subject matter jurisdiction, and on equitable grounds. Alternatively, the Individual Defendants move pursuant to 28 US.C. § 1334(c) for an order that this Court abstain from hearing these proceedings.

As set forth more fully herein, and as supported by the *Declaration of Marc Salkovitz* (the "MS Dec."), the *Declaration of Pam Salkovitz* (the "PS Dec."), and the *Declaration of Marjorie*

1

*Kaufman* (the "MK Dec."), this Court should remand these proceedings to the Superior Court, or otherwise abstain from exercising any concurrent jurisdiction.

## I. Background and Procedural History

Beginning in November 2020 and ending on July 7, 2023, Marc functioned as the Executive Chairman of Christmas Tree Shops, LLC ("CTS"), and Pam functioned as the CTS Chief Executive Officer. (MS Dec. at ¶ 2; PS Dec. at ¶ 2.) Presently, and as of the commencement of the Superior Court Action, the Individual Defendants are and were domiciled in the Commonwealth of Massachusetts. (MS Dec. at ¶¶ 3-13; PS Dec. at ¶¶ 3-14.)

Hilco is a limited liability company specializing in, *inter alia*, retail store closings. [ECF Dkt. No. 1-1, pg. 4, ¶ 7.] On July 7, 2023 CTS retained Hilco to liquidate its retail inventory (the "GOB Liquidation"), with its compensation computed on GOB Liquidation proceeds. [ECF Dkt. No. 1-1, pgs. 4-5, ¶¶ 14, 15, 16.] Hilco retained, used, and directed CTS employees to carry out the GOB Liquidation. [ECF Dkt. No. 1-1, pg. 5, ¶¶ 17, 18, 19.] Plaintiffs Christopher Corbin and Rich Seronick ("Plaintiffs") were two such persons who Hilco retained, used, and directed to carry out the GOB Liquidation in Massachusetts. [ECF Dkt. No. 1-1, pgs. 5-6, ¶¶ 23, 24.] Hilco agreed that the persons it retained, used, and directed to carry out the GOB Liquidation would be paid a retention bonus to assist Hilco with the GOB Liquidation. [ECF Dkt. No. 1-1, pg. 5, ¶¶ 21, 22.] On August 12, 2023 Hilco ended the GOB Liquidation and abruptly terminated all persons it retained to assist it with the GOB Liquidation. [ECF Dkt. No. 1-1, pg. 6, ¶ 25.]

On September 25, 2023 Plaintiffs, individually and on behalf of all others similarly situated, initiated the Superior Court Action against the Individual Defendants and Hilco by summons and complaint (the "Complaint"). [ECF Dkt. No. 1-1, pgs. 2-9.] Plaintiffs, who are Massachusetts domiciles, [ECF Dkt. No. 1-1, pgs. 3, ¶¶ 3, 4], allege they, and others similarly

2

situated to them, were not paid wages earned through the August 12, 2023 end of the GOB Liquidation, and/or that they were not paid accrued, unpaid vacation pay and/or the retention bonus Hilco agreed to pay to those persons who assisted Hilco with the GOB Liquidation. [ECF Dkt. No. 1-1, pg. 6, ¶ 26.] Plaintiffs assert three Massachusetts state law claims: (a) Count I, for alleged violations of G.L. c. 149, § 148; (b) Count II, for alleged unjust enrichment; and (c) Count III, for alleged negligent misrepresentations. [ECF Dkt. No. 1-1, pgs. 2-9.] The Plaintiffs demand a jury trial, [ECF Dkt. No. 1-1, pg. 9], as will the Individual Defendants.

On November 17, 2023 Hilco filed a *Notice of Removal* [ECF Dkt. No. 1] asserting the right pursuant to 29 U.S.C. § 1452 to remove the Superior Court Action, premised on alleged bankruptcy jurisdiction promulgated by 29 U.S.C. § 1334, and Class Action Fairness Act jurisdiction promulgated by 29 U.S.C. § 1332(d). The Individual Defendants move to remand the Superior Court Action to the Superior Court, or, in the alternative, for this Court to abstain from exercising any concurrent jurisdiction.

## II. Applicable Statutes

For ease of reading, the Individual Defendants include in the attached Appendix the full text of the statutes applicable to the Motion. Those statutes are: (i) 28 U.SC. § 1447(c) (removal and remand generally); (ii) 28 U.S.C. § 1452(b) (remand after removal in bankruptcy); (iii) 28 U.S.C. 1334(c) and (d) (abstention after removal in bankruptcy); and (iv) 28 U.S.C. § 1334(d)(4) (directing abstention in certain class action cases).

## III. Argument

Hilco asserts this Court may exercise jurisdiction over the Superior Court Action pursuant to 28 U.S.C. § 1334(b) ("Section 1334(b)") and 28 U.S.C. § 1332(d) ("Section 1332(d)"). Hilco is wrong as to Section 1334(b) because the Superior Court Action is not a

proceeding that arose in, or that is related to a case under Title 11 of the United States Code (the "Bankruptcy Code"). Hilco is also wrong as to Section 1332(d) because, even if that jurisdiction exists, that statute mandates that this Court decline to exercise jurisdiction under the facts of this case. This Court must therefore remand these proceedings to the Superior Court.

**A. Section 1334(b) Does Not Confer Subject Matter Jurisdiction Of The Superior Court Action.**

"When presented with a motion to remand a proceeding which has been removed from the state court, the [] court must first evaluate whether the state court action was properly removed; that is, it must determine whether it has subject matter jurisdiction over the proceeding." Work/Family Directions v. Children's Discovery Ctrs. (In re Santa Clara County Care Consortium), 223 B.R. 40, 44 (1st Cir. B.A.P. 1998). A removing party bears the burden of establishing jurisdiction for proper removal. Bibeault v. CVS Pharm., Inc., 2019 U.S. Dist. LEXIS 134825, *6 (D. Mass., Jun. 21, 2019) (citing Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008)). If the court determines it does not have jurisdiction, it must remand. Id. (citing 28 U.S.C. § 1447(c)). Here, 28 U.S.C. § 1447(c) requires remand.

**1. The Superior Court Action claims did not arise in a bankruptcy case.**

Hilco argues that the Superior Court Action claims arose in, or are related to the CTS Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the District of Delaware (the "CTS Bankruptcy Case"). Hilco asks the Court to exercise jurisdiction that Congress did not authorize.[1] A proceeding arises under the Bankruptcy Code only when the Bankruptcy Code creates the cause of action or the asserted substantive right. Gupta v. Quincy Med. Ctr., 858 F.3d 657, 662 (1st Cir. 2017) (quoting Wood v. Wood (In re Wood), 825 F.2d 90,

---

[1] Section 1334(b) states "the district courts shall have original *but not exclusive jurisdiction* of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b)(emphasis supplied). 28 U.S.C. § 1334(b)(emphasis supplied).

96 (5th Cir. 1987). The First Circuit has long held that a proceeding arises in a bankruptcy case only if the asserted rights "would have *no* existence outside bankruptcy." Gupta, 858 F.3d at 662-63 (quoting Middlesex Power Equip. & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002)) (emphasis supplied). The "arising in" jurisdiction branch does not apply here.

All of Plaintiffs' claims arise solely out of state law, [ECF Dkt. No. 1-1, pgs. 2-9], and none can seriously be said to be created by the Bankruptcy Code, or to have no existence outside bankruptcy. Gupta, 858 F.3d at 662-63. Count I, for alleged violations of G.L. c. 149, § 148, is a creature of the Massachusetts legislature, routinely remedied outside bankruptcy. See, e.g., Malden Police Patrolman's Association v. City of Malden, 92 Mass. App. Ct. 53 (2107) (statutory claims outside bankruptcy); Platt v. Traber, 85 Mass. App. Ct. 1114 (2014) (same); Crocker v. Townsend Oil Co., Inc., 464 Mass. 1 (2012) (same). The same is true of Count II (unjust enrichment) and Count III (negligent misrepresentation). See Fox v. F & J Gattozzi Corp., 41 Mass. App. Ct. 581 (1996) (unjust enrichment and negligent misrepresentation Massachusetts law claims outside bankruptcy). Under controlling appellate authority governing the application of Section 1334(b), none of Plaintiffs' claims are creatures of the Bankruptcy Code that arose in, and that could not exist outside the CTS Bankruptcy Case.

**2. The Superior Court Action claims are not related to a bankruptcy case.**

As to the arguably broader "related to" jurisdiction branch, Hilco founds its argument on putative indemnity rights Hilco contends its holds against the CTS bankruptcy estate, making the Superior Court Action "related to" the CTS Bankruptcy Case. Hilco is again wrong. A civil proceeding is "related to" a bankruptcy case only when those proceedings have some effect on the bankruptcy estate, or an impact on estate administration. Gupta, 858 F.3d at 663 (quoting

Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68.  While "related to" jurisdiction may be broad, there remains a "strong presumption against removal jurisdiction generally."  Cambridge Place Inv. v. Morgan Stanley & Co., 2010 U.S. Dict. LEXIS 142954, *15-16 (D. Mass., Dec. 10, 2010) (citing Natale v. Pfizer, Inc., 379 F. Supp. 2d 161, 172 (D. Mass. 2005)).  Without the required nexus, "related to" jurisdiction is absent.  Here, the indemnity rights no longer exist after conversion of the CTS Bankruptcy Case to chapter 7, and in any event are so remote that the Superior Court Action is entirely unrelated to the CTS Bankruptcy Case.

### a.  The executory Store Closing Contract, including any indemnity, is no longer enforceable against the CTS estate.

Foundational to the Hilco argument on related to jurisdiction is a May 31, 2023 CTS Bankruptcy Case order authorizing CTS to assume the Store Closing Agreement (the "SCA") under which Hilco claims indemnity rights.  However, on August 16, 2023 (four days after Plaintiffs' claims arose), the CTS Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code, which triggered a new assumption and rejection period for the bankruptcy trustee by operation of Bankruptcy Code §§ 348(c) and 365(d)(1), and ended Hilco's right to enforce any SCA term.  As a consequence, Hilco has no enforceable SCA indemnity rights.

 The United States Supreme Court has held that "[a] contract is executory if 'performance remains due to some extent on both sides.'"  Mission Prod. Holdings v. Tempnology, LLC, 139 S. Ct. 1652, 1658 (2019) (quoting NLRB v. Bildisco & Bildisco, 465 U.S. 513, 522 n.6 (1984)).  In a case converted from chapter 11 to a case under chapter 7, the time for testing whether a contract is executory, when reciprocal unperformed obligations exist, is the time of conversion. In re Tex. Wyo. Drilling, Inc., 486 B.R. 746, 754 (Bankr. N.D. Tex. 2013) (citing 11 U.S.C. § 348(c)).  On August 16, 2023, and even today, the SCA is an executory contract subject to rejection by the CTS bankruptcy trustee that Hilco cannot enforce.

The SCA states that CTS, as Merchant, and Hilco, as Agent, owed at least the following performances as of the August 16, 2023 conversion date:

(i) Merchant's Indemnification

*Merchant shall* indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, affiliates, and Supervisors (collectively, "Agent Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Agent Indemnified Parties) against Agent or an Agent Indemnified Party, *except claims arising from Agent's negligence, willful misconduct or unlawful behavior*; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Agent's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

(ii) Agent's Indemnification

*Agent shall indemnify, defend and hold Merchant* and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Agent or the Agent Indemnified Parties) (collectively, "Merchant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) *the willful or negligent acts or omissions of Agent* or the Agent Indemnified Parties; (b) *the breach of any provision of, or the failure to perform any obligation under, this Agreement by Agent*; (c) any liability or other claims made by Agent's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Agent or any of the Agent Indemnified Parties and (e) *any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement*.

7

SCA, Section F (emphases supplied). The SCA indemnity terms do expressly survive any SCA termination or satisfaction. The SCA also states that:

> ***Agent shall remit to Merchant*** all Gross Proceeds from the sale of FF&E. During each weekly reconciliation described in section E above, Agent's FF&E fee shall be calculated, and Agent's calculated FF&E fee and all FF&E costs and expenses then incurred shall paid within seven (7) days after each such weekly reconciliation.

SCA, Section I. The SCA also states that:

> ***Agent shall pay to Merchant*** an amount equal to six and one-half percent (6.5%) of the gross proceeds (excluding Sale Taxes) from the sale of the Additional Agent Goods (the "Additional Agent Goods Fee"), and Agent shall retain all remaining amounts from the sale of the Additional Agent Goods. Agent shall pay Merchant its Additional Agent Goods Fee in connection with each weekly sale reconciliation with respect to sales of Additional Agent Goods sold by Agent during each then prior week (or at such other mutually agreed upon time).

SCA, Section J (emphases supplied). Hilco does not allege, and for good reason, that it had reconciled its accounts with CTS less than four days after it ended the GOB Liquidation. Moreover, the mutual indemnity terms alone meet the Supreme Court standard that a "'performance remains due to some extent on both sides.'" Tempnology, LLC, 139 S. Ct. at 1658. There is no question the SCA was an executory contract on August 16, 2023.

Bankruptcy Code § 365(d)(1) provides that in Chapter 7 cases, "if the trustee does not assume or reject an executory contract . . . of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected." 11 U.S.C. § 365(d)(1); Bezanson v. Metropolitan Ins. & Annuity Co., 952 F.2d 1, 7 (1st Cir. 1991). Upon the rejection of an executory contract, it is no longer part of the estate. Stolz v. Brattleboro Hous. Auth. (In re Stolz), 315 F.3d 80, 86 (2nd Cir. 2002). When a case is converted from chapter 11 to chapter 7, a new assumption and rejection

period begins for the bankruptcy trustee by operation of Bankruptcy Code §§ 348(c)[2] and 365(d)(1). See In re Helm, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006); 11 U.S.C. § 348(c) (conversion of case triggers start of statutory assumption/rejection period); 11 U.S.C. § 365(d)(1) (self-executing contract rejection after 60 days). During the statutory assumption/rejection election period a contract counterparty cannot enforce those contract rights. NLRB v. Bildisco & Bildisco, 465 U.S. at 538. By operation of law on and after August 16, 0223,[3] Hilco had no enforceable indemnity rights to make the Superior Court "related to" the CTS Bankruptcy Case.

### b. The SCA indemnity terms are not automatic, rendering indemnity too remote to support "related to" jurisdiction.

Even if the SCA indemnity terms are enforceable, those rights are nonetheless too remote to confer bankruptcy jurisdiction over the Superior Court Action. Other federal courts in this district presented with removals premised on "related to" jurisdiction based on alleged indemnity rights against a non-party bankruptcy estate have determined no such jurisdiction exists. See e.g., Bibeault, 2019 U.S. Dist. LEXIS 134825; Honor v. Johnson & Johnson, 2019 U.S. Dist. LEXIS 103057 (D. Mass., Jun. 19, 2019); O'Riorden v. Johnson & Johnson, 2019 U.S. Dist. LEXIS 93865 (D. Mass., Jun. 5, 2019); Rivera v. Johnson & Johnson, 2019 U.S. Dist. LEXIS

---

[2] Hilco may argue that the order approving the SCA continued the indemnity despite the conversion of the CTS Bankruptcy Case. Section 348(c) of the Bankruptcy Code, though, does not contain express discretionary language, such as "unless the court orders otherwise," or other words to that effect, permitting the bankruptcy court to supplant the trustee's rights after conversion. See In re Singer, 368 B.R. 435, 444 (Bankr. E.D. pa. 2007) (unless the court orders otherwise" Congressional grant of court discretion); see also, In re De Armas Cubas, 2009 Bankr. LEXIS 3383, *1-5 (Bankr. D.P.R., Oct. 14, 2009)(same). Since the court could not curb the terms of Bankruptcy Code § 348(c), the trustee was appointed with a clean slate on decision to assume or reject the SCA. See Helm, 335 B.R. at 538; 11 U.S.C. § 348(c).

[3] Whether rejected by the CTS bankruptcy trustee or deemed rejected by statute, Hilco cannot enforce any SCA indemnity, NLRB v. Bildisco & Bildisco, 465 U.S. at 538, which when rejected will be a mere prepetition, unsecured, non-priority contract breach claim, see Tempnology, LLC, 139 S. Ct. at 1661-62; see also Woburn Assoc. v. Kahn, et al. (In re Hemingway Transport, Inc.), 954 F.2d 1, 7-9 (1st Cir. 1992); 11 U.S.C § 365, in a liquidation case without assets to pay such claims.

129188 (D. Mass., May 31, 2019). In those cases, other Massachusetts federal courts have held that the subject indemnity was too remote to support "related to" jurisdiction.

For example, Judge Sorokin ordered the remand of the plaintiff's case to the Massachusetts state courts in Rivera v. Johnson & Johnson, 2109 U.S. Dist. LEXIS 129188 (D. Mass., May 31, 2019), because the indemnity claimed by that defendant was too remote to confer "related to" bankruptcy jurisdiction. There, the court, in considering Third Circuit case law suggested by the parties, Pacor, Inc., v. Higgins, 743 F.2d 984, 995, (3d Cir. 1984), reached the conclusion that where the defendant's indemnity rights would themselves be the subject of other litigation, "related to" jurisdiction was absent. Rivera, 2109 U.S. Dist. LEXIS 129188, * 4-6. The court noted that the plaintiff's allegations fell within the indemnity exceptions, and also possibly gave rise to cross-indemnity claims by the non-party bankruptcy estate. Id. Based on the disputed, non-automatic nature of the claimed indemnity, the court concluded no "related to" jurisdiction existed. Id.; see also Honor, 2019 U.S. Dist. LEXIS 103057, *3-4; O'Riorden, 2019 U.S. Dist. LEXIS 93865, *4-5.

Likewise, in Bibeault v. CVS Pharm., Inc., 2019 U.S. Dist. LEXIS 134825 (D. Mass., Jun. 21, 2019), the defendant removed an asbestos related personal injury case from a state court on grounds of "related to" jurisdiction on the basis that its non-party product supplier, then in bankruptcy, owed it indemnity such that, the defendant contended, the bankrupt was the true party in interest. Bibeault, 2019 U.S. Dist. LEXIS 134825, *1-6. Looking to Third Circuit case law the parties suggested, but that the court did not decide controls, New Jersey v. W.R. Grace & Co. (In re W.R. Grace & Co.), 412 B.R. 657, 667 (D. Del. 2009; In re Combustion Eng'g, Inc., 391 F.3d 190, 231 (3d Cir. 2004), that court adopted a standard under which an indemnity right does not support "related to" unless it is automatic. Bibeault, 2019 U.S. Dist. LEXIS 134825,

10

\*6-7.  In recommending remand, the court found that, because those indemnity terms contained both exceptions, and cross-indemnity obligations, the indemnity was not automatic, and therefore no "related to" jurisdiction existed.  Bibeault, 2019 U.S. Dist. LEXIS 134825, \*6-8.  This Court should join the others federal courts in this district and hold that "related to" jurisdiction is not present when indemnity claims against a bankrupt are not automatic.

Like those in other cases in this district, the SCA also includes indemnity exceptions and cross-indemnity, all of which are implicated by Plaintiffs' claims (and crossclaims the Individual Defendants will assert against Hilco and perhaps others), defeating "related to" jurisdiction.  As to the CTS indemnity obligation to Hilco, the SCA excepts claims against Hilco for its own "negligence, willful misconduct or unlawful behavior."  SCA, Section F(i).  On the indemnity obligations of Hilco to CTS, Hilco must indemnify CTS for, *inter alia*, claims arising out of Hilco's own willful or negligent acts or omissions, any SCA breach, and, particularly relevant here, any claims made by any party engaged by Hilco as an employee, agent, representative or independent contractor in connection with the GOB Liquidation.

All, or substantially all of the Superior Court Action claims fall within CTS indemnity exceptions and Hilco cross-indemnity obligations, such that Hilco's indemnity right, even if enforceable now or in the future, is not automatic so as to support "related to" jurisdiction.  See e.g., Bibeault, 2019 U.S. Dist. LEXIS 134825; Honor, 2019 U.S. Dist. LEXIS 103057; O'Riorden, 2019 U.S. Dist. LEXIS 93865; Rivera, 2019 U.S. Dist. LEXIS 129188; see also Work/Family Directions, 223 B.R. at 47-49.  On the contrary, the resolution of those bi-lateral indemnity rights is so remote as to require that the Court remand to the Superior Court for lack of subject matter jurisdiction.

**B. This Court Should Abstain From Exercising Any Concurrent Jurisdiction.**

Even if this Court determines it does or may have concurrent jurisdiction, abstention is either mandatory or appropriate under the circumstances.

**1. Mandatory abstention is statutorily required.**

**a.  The Court is required to abstain pursuant to 28 U.S.C. § 1334(c)(2).**

Under the mandatory abstention set forth in 28 U.S.C. § 1334(c)(2), the court "must abstain if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction." Wells Fargo Bank N.A. v. Johnson, 2012 U.S. Dist. LEXIS 482282, 9-10 (D. Del., April 4, 2012) (citing Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006)); see also Cambridge Place Inv., 2010 U.S. Dict. LEXIS 142954, *23-24.  Each element of mandatory abstention is present here.

First, the Superior Court Action is based wholly on state law claims and causes of action. [ECF Dkt. No. 1-1, pgs. 2-9].  Second, the Superior Court Action is at most related to the CTS Bankruptcy Case, but the claims did not "arise under" the Bankruptcy Code and did not "arise in" the CTS Bankruptcy Case.  See supra, Sec. III.A.1.  Third, since this Court must decline to exercise CAFA jurisdiction, see infra, Sec. III.B.1.b., federal courts would not have jurisdiction over the Superior Court Action but for its disputed relation to the CTS Bankruptcy Case.  Fourth, the Superior Court Action was in a state forum of appropriate jurisdiction.  See G.L. c. 212, § 4; see also, Crocker, 464 Mass. 1; Fox, 41 Mass. App. Ct. 581.  Fifth, and finally, the Superior

Court has assigned the Superior Court Action to Track F (Fast Track), [ECF Dkt. No. 1-1, pg. 1]; see also Superior Court Standing Order 1-88 F.1. (setting forth time standards for adjudication of Track F cases).  Moreover, Hilco has not alleged or factually supported any contention that the Superior Court cannot be timely adjudicate these proceedings.  This Court must therefore abstain from exercising any jurisdiction over the Superior Court Action.

### b.  The Court is required to abstain pursuant to 28 U.S.C. § 1332(d)(4).

The only federal subject matter jurisdiction exists only under 28 U.S.C. § 1332(d)(2), which Congress directed in the same statute that the Court must decline to exercise.  Section 1332(d)(4) mandates that this Court must decline to exercise CAFA jurisdiction "when two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C § 1332(d)(4); see also Grimsdale v. Kash N' Karry Food Stores, Inc. (In re Hannaford Bros. Customer Data Sec. Breach Litig.), 564 F.3d 75, 76 (1st Cir. 2009).  The facts are that on August 12, 2023 when Hilco ended the GOB Liquidation, 454 individuals class members worked at Massachusetts GOB Liquidation locations.  (MK Dec. at ¶ 4.)  Of those class members, 420 (or 92.5%) were Massachusetts residents.  (MK Dec. at ¶ 5.)  In addition, far greater than two-thirds of those class members were to pay Massachusetts income tax.  (MK Dec. at ¶¶ 5, 6, 7.)  Finally, the Individual Defendants, alleged to be Plaintiffs' employers under Massachusetts law, were and are citizens of, and domiciled in Massachusetts, (MS Dec. at ¶¶ 3-13; PS Dec. at ¶¶ 3-14), where the Superior Court Action was filed.  The home state exception requires that this Court decline to exercise CAFA jurisdiction.

### 2. The Court may abstain pursuant to 28 U.S.C. § 1334(c)(1).

Section 1334(c)(1) permits this Court to abstain from exercising any concurrent jurisdiction over the Superior Court Action. District courts "have broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" Middlesex Power Equip. & Marine, Inc., 292 F.3d at 69 (internal citations omitted). A decision to abstain is reviewed only for abuse of that discretion. Id. Three criteria apply: the interests of justice, comity, and respect for state law. Id. Factors considered are the extent to which state law predominates, the presence of a related prior state court proceeding, and likelihood that the removal involves forum shopping. Id. (citing Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1166-67 (9th Cir. 1990); In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993). Each of those factors exist here.

First, state law predominates. See supra, Sec. I; III.A.1; see also Honor, 2109 U.S. Dist. LEXIS 103057, *4. Second, the Superior Court Action was filed well before the Hilco effort to remove. Third, it is undeniable that the Hilco motion to change venue to Delaware, [ECF Dkt. Nos. 11, 12], is blatant forum shopping. This Court should abstain under the discretionary authority granted it by 28 U.S.C. § 1334(c)(1).

### 3. Equitable abstention is warranted under the circumstances.

Pursuant to 28 U.S.C. § 1452(b), district courts have "discretion to remand cases removed under 28 U.S.C. § 1452(a) 'on any equitable ground.' 28 U.S.C. § 1452(b). To determine whether equitable grounds exist, courts consider the following factors: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or

remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court." O'Riorden, 2019 U.S. Dist. LEXIS 93865, *6 (internal citations omitted).  Here, all equities weigh in favor of remand.

### a.   The Superior Court Action is not related to, and will not effect the CTS Bankruptcy Case.

As stated herein, the rights Hilco claims to have against the CTS bankruptcy estate will require independent adjudication between Hilco and CTS that does not involve Plaintiffs or the Individual Defendants, and that will have no impact on the administration of the CTS Bankruptcy Case.  See supra, Sec. III.A.1.  Moreover, the adjudication of those claims between Hilco and CTS may well protract otherwise straightforward litigation.

### b.  Massachusetts state law predominates.

All of the Superior Court Action claims arise out of, and are governed by the application of Massachusetts law, and involve parties that are either domiciled in this Commonwealth, or, in the case of Hilco, voluntarily engaged in trade or commerce in this Commonwealth, from which it derived substantial revenues.  See supra, Sec. I; III.A.1; see also Honor, 2109 U.S. Dist. LEXIS 103057, *4.  Massachusetts law predominates in favor of equitable remand.

### c.  Comity and federalism are promoted by equitable remand.

Principles of comity and federalism in cases such as this suggest deference is due to the Superior Court, which was the first court to gain jurisdiction over the dispute.  Quality One Wireless, LLC v. Goldie Group, LLC, 37 F. Supp. 3d 536, 543 (D. Mass. 2104).  While it is true this Court is qualified to decide the state law issues here, which do not at all involve federal law, id., deference to and respect for the Superior Court weigh in favor of remand.

### d.  The Individual Defendants have a right to a jury trial.

The Individual Defendants have a right to a jury trial, which they will demand at the proper time.  See Rosati v. Boston Pipe Covering, Inc., 434 Mass. 349, 351-52 (2001)(right to jury trial of claims seeking remedies at law, including claims under G.L. c. 149).  See 29 U.S.C § 1452(b); see also Work/Family Directions, 223 B.R. at 46 (jury rights militate in favor of remand).  While this Court could afford those jury rights, the clear forum shopping destination Hilco intends is the bankruptcy court in Delaware, [ECF Dkt. Nos. 11, 12], which cannot conduct a jury trial without the Individual Defendants' consent, see 28 U.S.C. 157(e), which they will not give.  The jury rights involved weigh in favor of equitable remand.

### e.  The Individual Defendants will be prejudiced by removal.

Hilco's effort to remove the Superior Court Action to Delaware (it seeks to use this Court as a mere transporter of the Superior Court Action) tries to involve the Individual Defendants in indemnity litigation between it and CTS, in a forum distant from their domicile and the domiciles of the workers Hilco employed and engaged for its GOB Liquidation.  Such a move will require the Individual Defendants to obtain new counsel, face the prospect and expense of travel, and have legal issues arising under and controlled by Massachusetts law decided in a forum that does not hear and decide those issues daily.  The prejudice to the non-removing parties weigh in favor of equitable remand.

## IV.  Conclusion

For the foregoing reasons, this Court to grant the Motion and remand the Superior Court Action to the Superior Court, or otherwise abstain from exercising any concurrent jurisdiction.

Dated:  December 18, 2023

MARC SALKOVITZ and
PAM SALKOVITZ,

By their attorneys,

/s/ Michael J. Fencer

Michael J. Fencer (BBO No. 648288)
Stéphanie Smith (BBO No. 660572)
CASNER & EDWARDS, LLP
303 Congress Street
Boston, Massachusetts   02210
Tel.:  617-426-5900
Fax:  617-426-8810
Email:  fencer@casneredwards.com
          smith@casneredwards.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies to having served a true and accurate copy of the foregoing document, including all exhibits and attachments thereto, as electronically filed with the Court, on all persons entitled to notice by means of electronic notice of filing sent via the Court's CM/ECF system.

/s/ Michael J. Fencer

Michael J. Fencer

**Appendix**

Section 1447(c) of Title 28 of the United States Code states that:

(c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C § 1447(c).

Section 1452(b) of Title 28 of the United States Code states that:

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b).

Section 1334 of Title 28 of the United States Code states in pertinent part:

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 US.C. § 1334(c).

(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the

> applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

28 US.C. § 1334(d).

> Section 1332(d)(4) of Title 28 of the United States Code states that:
>
> > (d)(4) A district court shall decline to exercise jurisdiction under paragraph (2)—
> >
> > > (A)(i) over a class action in which—
> > >
> > > > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> > > >
> > > > (II) at least 1 defendant is a defendant—
> > > >
> > > > > (aa) from whom significant relief is sought by members of the plaintiff class;
> > > > >
> > > > > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> > > > >
> > > > > (cc) who is a citizen of the State in which the action was originally filed; and
> > > >
> > > > (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> > >
> > > (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
> >
> > (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4).