UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTOPHER CORBIN and RICH SERONICK, Individually, and on behalf of all others similarly situated, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:23-cv-12807-IT |
| MARC SALKOVITZ, PAM SALKOVITZ, and HILCO MERCHANT RESOURCES, LLC, | * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER
November 1, 2024

TALWANI, D.J.

Pending before this court is Defendant HILCO Merchant Resources, LLC's ("Hilco")

Motion to Transfer Case Venue to Delaware [Doc. No. 11] ("Motion to Transfer"), Defendants

Marc Salkovitz and Pam Salkovitz's Motion to Remand to State Court, or, in the Alternative, to

Abstain from Hearing Removed Proceedings [Doc. No. 16] (the "Salkovitzes' Remand

Motion"), and Plaintiffs Christopher Corbin and Rich Seronick's Motion to Remand to State

Court and for Limited Jurisdictional Discovery [Doc. No. 21] ("Plaintiffs' Remand Motion"). In

the best interests of justice and comity, Plaintiffs' claims against the Salkovitzes are SEVERED

from the claims against Hilco, the Motions to Remand [Doc. Nos. 16, 21] are GRANTED as to

Plaintiffs' claims against the Salkovitzes and DENIED as to Plaintiffs' claims against Hilco, and

Hilco's Motion to Transfer Venue [Doc. No. 11] is GRANTED as to the claims against Hilco.

# I.     Background

## A.     *Factual Background as Alleged in the Complaint*

At all times relevant to the claims in the putative class action complaint, Defendant Marc Salkovitz was the Executive Chairman and Defendant Pam Salkovitz was Chief Executive Officer of Christmas Tree Shops, LLC ("Christmas Tree Shops"), a chain of big-box specialty retail stores. State Court Compl. ¶¶ 5–6, 8, 28 [Doc. No. 2-1] (hereinafter "Compl."). Together, they controlled, directed, and participated to a substantial degree in the formulation and determination of Christmas Tree Shops policies and were the two highest ranking officers of the company. Id. ¶ 5. Defendant Hilco is a limited liability company that specializes in, *inter alia*, retail store closings. Id. ¶ 7. Plaintiff Corbin was employed by Christmas Tree Shops' Middleborough, Massachusetts corporate office as Vice President, Enterprise Systems, and Plaintiff Seronick was employed as a store-level associate out of Christmas Tree Shops' store in Foxboro, Massachusetts. Id. ¶¶ 3–4.

On January 6, 2023, Christmas Tree Shops entered into an Agreement for Consignment of Memo Merchandise ("Consignment Agreement") with Restore Capital, LLC ("CTS"), an affiliate of Hilco. Id. ¶ 10. The purpose of the Consignment Agreement was for Hilco to oversee a "going-out-of-business" sale for Christmas Tree Shops. See id. ¶ 11.

On or about May 5, 2023, Christmas Tree Shops filed for Chapter 11 bankruptcy. Id. ¶ 12. Christmas Tree Shops announced that liquidation sales would begin around July 7, 2023, and retained Hilco as the liquidator. Id. ¶¶ 14–15. Hilco was compensated based on the amount of revenue generated by the liquidation sales, and Hilco regularly provided instruction and direction to Christmas Tree Shops employees throughout the liquidation. Id. ¶¶ 16–17. For instance, Hilco representatives frequently called Christmas Tree Shops district managers to

instruct them to provide additional staffing in certain stores and gave direct instructions to store employees working during the liquidation. Id. ¶¶ 18–19.

At or around the start of the liquidation sales, Marc Salkovitz told Christmas Tree Shops CFO Margie Kaufman and Senior Vice President of Store Operations Trace Hoyer that, following conversations with Hilco President Ian Fredericks, all store employees who agreed to work through the end of the liquidation sale would be paid a retention bonus. Id. ¶ 21. As a result, Christmas Tree Shops store employees were promised that in exchange for working through the end of the liquidation sale, they would be paid this retention bonus in addition to their regular wages. Id. ¶ 22. Based on these representations, employees, including Corbin and Seronick, continued to work through the liquidation. Id. ¶ 24.

On August 12, 2023, Hilco employee Michael Dwyer instructed Hoyer that the liquidation sales were ending and that all Massachusetts-based Christmas Tree Shops store employees were to be terminated, effective immediately. Id. ¶ 25. On their final day of employment, these employees, including both Plaintiffs, were not paid the wages they earned during the final pay period, their accrued and unused vacation, and the retention bonuses promised. Id. ¶ 26.

    B.    *The Bankruptcy Proceedings*

As noted above, on or about May 5, 2023, Christmas Tree Shops filed for Chapter 11 bankruptcy[1] in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy

---

[1] The Supreme Court has provided the following bankruptcy fundamentals: "In Chapter 11, debtor and creditors try to negotiate a plan that will govern the distribution of valuable assets from the debtor's estate and often keep the business operating as a going concern. See, e.g., 11 U.S.C. §§ 1121, 1123, 1129, 1141 (setting out the framework in which the parties negotiate)." Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 455 (2017). "Filing for Chapter 11 bankruptcy has several relevant legal consequences. First, an estate is created comprising all property of the debtor. § 541(a)(1). Second, a fiduciary is installed to manage the estate in the interest of the

3

Court"). <u>See generally</u> Voluntary Petition for Non-Individuals Filing for Bankruptcy, Exh. B to Decl. of Jason Schabinger ("Schabinger Decl.") [Doc. 2-2]. The Salkovitzes did not file individually for bankruptcy and are not among the debtors in that proceeding. On May 7, 2023, the Christmas Tree Shops and other debtors (again, not including the Salkovitzes) filed an emergency motion, <u>see</u> Schabinger Decl. ¶ 6 [Doc. 2], which the Bankruptcy Court granted on May 31, 2023, entering a <u>Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims and Encumbrances, and (III) Granting Related Relief</u> (the "<u>Final Store Closing Order</u>"), Exh. D to Schabinger Decl. [Doc. 2-4]. Specific terms of the <u>Final Store Closing Order</u>, which includes provisions relating to Hilco, are discussed below.

On August 16, 2023—four days after Plaintiffs and putative class members' employment was terminated—the Bankruptcy Court entered an <u>Order Converting the Debtors' Chapter 11 Cases to Cases under Chapter 7</u> [Doc. No. 29-1] ("<u>Conversion Order</u>").[2] George Miller was appointed as the new trustee of the bankruptcy estate under Chapter 7. Decl. of George Miller, Chapter 7 Trustee ("Miller Decl.") [Doc. No. 29]. On December 21, 2023, the Bankruptcy Court entered an <u>Order Approving Stipulation Between the Chapter 7 Trustee, Restore Capital, LLC,</u>

---

creditors. §§ 1106, 1107(a). This fiduciary, often the debtor's existing management team, acts as 'debtor in possession.' §§ 1101(1), 1104. It may operate the business, §§ 363(c)(1), 1108, and perform certain bankruptcy-related functions, such as seeking to recover for the estate preferential or fraudulent transfers made to other persons, § 547 (transfers made before bankruptcy that unfairly preferred particular creditors); § 548 (fraudulent transfers, including transfers made before bankruptcy, for which the debtor did not receive fair value). Third, an 'automatic stay' of all collection proceedings against the debtor takes effect. § 362(a)." <u>Id.</u> at 455–56.

[2] "[A] possible outcome [or a Chapter 11] is conversion of the case to a Chapter 7 proceeding for liquidation of the business and a distribution of its remaining assets. §§ 1112(a), (b), 726. That conversion in effect confesses an inability to find a plan [to keep the business operating]." <u>Czyzewski</u>, 580 U.S. at 456.

and Pathlight Capital, LP, Providing for Payment of Certain Unpaid Payroll Amounts. [Doc. No. 29-5] ("Settlement Order"). In accordance with the Settlement Order, Miller paid the debtors' outstanding payroll obligations that the Bankruptcy Court had approved to be paid, which included wages, salaries, vacation pay, holiday pay, and sick pay. Miller Decl. ¶ 10 [Doc. No. 29]. Miller remains trustee as the Bankruptcy Court continues to handle the administration of the bankruptcy estate. Id. Further proceedings in the Bankruptcy Court, as potentially relevant here, are discussed below.

C.    *Procedural Background in this Court*

In September 2023, Plaintiffs Corbin and Seronick, individually and on behalf of all individuals employed by the Christmas Tree Shops in Massachusetts through the end of its liquidation sales, filed this putative class action lawsuit in Massachusetts Superior Court, Plymouth County, against Marc Salkovitz, Pam Salkovitz, and Hilco. Compl. ¶¶ 3–7, 27–34 [Doc. No. 2-1]. Plaintiffs have not named Christmas Tree Shops in this action.

Plaintiffs allege in Count I that the Salkovitzes violated the Massachusetts Wage Act, M.G.L. c. 149, § 148, by not properly paying wages due to their employees and are liable for the Plaintiffs' and putative class members' unpaid wages, treble damages, attorneys' fees, expenses and prejudgment interest. Id. ¶ 38. Hilco is not named in this count.

Plaintiffs allege in Count II that the Salkovitzes and Hilco have been unjustly enriched by accepting the benefit of the putative class's labor during the liquidation sale but not paying the class for the value provided. Id. ¶¶ 41–42. Finally, Plaintiffs allege that the Salkovitzes and Hilco failed to exercise reasonable care or competence when falsely representing that store employees would receive a retention bonus, and that the employees reasonably relied on the representations resulting in monetary loss to them. Id. ¶¶ 44–46.

Hilco removed the case from Suffolk Superior Court to this court, Not. of Removal [Doc. No. 1], and then filed the pending Motion to Transfer Case Venue to Delaware [Doc. No. 11]. Hilco seeks transfer to the United States District Court for the District of Delaware pursuant to 28 U.S.C. §§ 1404(a) and 1412. The Salkovitzes and Plaintiffs filed their Motions to Remand [Doc. Nos. 16, 21] and Oppositions to Hilco's Motion to Transfer Venue. See Salkovitzes' Opp. [Doc. No. 33]; Pls.' Opp. [Doc. No. 35]. The Salkovitzes ask in the alternative that the court abstain from hearing these proceedings pursuant to 28 U.S.C. § 1334(c), Mot. to Remand 1 [Doc. No. 16], while Plaintiffs seek limited jurisdictional discovery to the extent any factual issues exist concerning the citizenship of the parties, Mot. to Remand 1 [Doc. No. 21]. Hilco, in turn, opposes both motions to remand, see Hilco Opp. to Pls.' Mot. for Remand [Doc. No. 28]; Hilco Opp. to Salkovitz Mot. for Remand [Doc. No. 30], but also seeks jurisdictional discovery if the court reaches the citizenship issue, see Hilco Opp. to Pls.' Mot. for Remand 18, n.9 [Doc. No. 28].

None of the Defendants has filed an Answer or motion as required under Federal Rule of Civil Procedure 12.

## II.    Subject Matter Jurisdiction

"[A] federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004). Hilco asserts that this court has subject matter jurisdiction over the case under both the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and the Bankruptcy Removal Statute, 28 U.S.C. § 1344. Not. of Removal ¶¶ 10, 25 [Doc. No. 1]. Plaintiffs and the Salkovitzes argue that the court must abstain from exercising jurisdiction under CAFA and that Plaintiffs' claims against Hilco do not support federal jurisdiction under the Bankruptcy Removal Statute. See generally Pls.' Mem. ISO Mot.

[Doc. No. 22]; Salkovitz Mem. ISO Mot. [Doc. No. 17]. The court considers each basis for jurisdiction in turn.

    A.  *CAFA Jurisdiction*

        1.  Diversity Jurisdiction under CAFA

CAFA provides for diversity jurisdiction over class actions and putative class actions where the class or proposed class has at least 100 members; the matter in controversy (after aggregating the individual claims) exceeds $5,000,000, exclusive of interest and costs; and there is minimal diversity between the proposed class of plaintiffs and defendants. 28 U.S.C. § 1332(d)(2). There is minimal diversity when "[a]ny member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. §§ 1332(d)(2), (5)(B), (6).

Each of these requirements is met here. First, Plaintiffs' proposed class consists of at least 100 members. See Compl. ¶¶ 28, 30 [Doc. No. 2-1] ("hundreds" of similarly situated individuals, on information and belief); Not. of Removal ¶ 36 [Doc. No. 1] (class size of 374 former employees based on pleadings in the bankruptcy case); Decl. of Marjorie Kaufman, ¶ 4, Ex. A to Pls.' Mem. ISO Mot. [Doc. No. 22-1] (class size of 454 based on Christmas Tree Shops' final payroll records for individuals employed in Massachusetts).

Second, the amount in controversy exceeds $5,000,000 (exclusive of interests and costs). See Not. of Removal ¶ 37 (based on Corbin's individual proof of claim for unpaid wages of $15,150 multiplied by 374 employees). There is also minimal diversity: Defendant Hilco, a limited liability company, is a citizen of Illinois, Connecticut, Delaware, and Canada, while the named Plaintiffs are citizens of Massachusetts. See Compl. ¶¶ 3–4 [Doc. No. 2-1]; Decl. of Sarah Baker ¶¶ 6–10, Ex. H to Not. of Removal [Doc. No. 2-8].

2. The Local-Controversy Exception to CAFA Jurisdiction Applies.

CAFA also contains exceptions that prevent courts from exercising jurisdiction in certain cases. "A district court shall decline to exercise jurisdiction" under 28 U.S.C. § 1332(d)(2):

(i) over a class action in which –

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least one defendant is a defendant--

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).

Plaintiffs are correct that this exception independently requires that the court abstain from exercising its CAFA jurisdiction here. Pls.' Mem. ISO Mot. 7 [Doc. No. 22]. First, more than two-thirds of the members of the putative class are residents of Massachusetts. According to the former Chief Financial Officer, 420 of the 454 Massachusetts-based employees (or 92.5%) on Christmas Tree Shops' final payroll records had a residential address within Massachusetts. Decl. of Marjorie Kaufman, ¶¶ 4–5, Ex. A to Pls.' Mem. ISO Mot. [Doc. No. 22-1]. This proffered evidence is sufficient for this court to conclude that more than two-thirds of the proposed class members are Massachusetts citizens.

Second, the Salkovitzes are defendants whose alleged conduct forms a significant basis for the claims asserted and relief sought by the proposed class, Compl. ¶¶ 6–7 [Doc. No. 2-1],

and both Salkovitzes are citizens of Massachusetts. Marc Salkovitz Decl. 2 [Doc. No. 18]; Pam Salkovitz Decl. 2 [Doc. No. 19]. For purposes of determining citizenship, a person's domicile is the "place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Valentin v. Hospital Bella Vista, 254 F.3d 358, 366 (1st Cir. 2001) (quoting Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988)). "Domicile requires both physical presence in a place and the intent to make that place one's home." Id. "[T]o change domiciles, a person must move to a new state in which she intends to remain indefinitely." Id.

Per the Salkovitzes' Declarations, while they are currently living in California, their actions demonstrate both an intent to return to Massachusetts as well as a present belief that Massachusetts is still their permanent domicile. Marc Salkovitz Decl. 2 [Doc. No. 18]; Pam Salkovitz Decl. 2 [Doc. No. 19]. This includes Pam Salkovitz maintaining her Massachusetts driver's license and voter registration; the Salkovitzes' continued ownership of real property located in Massachusetts; their continued registration of vehicles with the Massachusetts Division of Motor Vehicles; their paying Massachusetts state income and state motor vehicle excise taxes; and their maintaining bank accounts and other financial relationships with institutions in Massachusetts. Pam Salkovitz Decl. 2 ¶¶ 5–11 [Doc. No. 19]. The court finds these declarations sufficient to establish that the Salkovitzes were residents of Massachusetts when this action was filed.

Hilco does not directly dispute the existence of the local controversy exception to CAFA, but it requests an opportunity to conduct limited discovery concerning the "citizenship of the Salkovitz Defendants" and to supplement its opposition to their motion to remand if the court reaches this issue. Hilco Opp. to Salkovitz Mot. 19–20 [Doc. No. 28]. Hilco argues that the

Salkovitzes' temporary move to California in 2023 may negate their Massachusetts citizenship. Id. But in light of the Salkovitz's declarations, Hilco's arguments to the contrary are unavailing, and Hilco's request for jurisdictional discovery based on these same declarations fails to provide a sufficient basis for jurisdictional discovery.

Third, principal injuries resulting from the alleged conduct were incurred in Massachusetts. Compl. ¶ 1 [Doc. No. 2-1]. And, finally, to the court's knowledge, no other class action has been filed asserting the same or similar factual allegations against the Salkovitzes or Hilco in the previous three years.[3]

Accordingly, the local controversy exception to CAFA does apply and this court may not base federal jurisdiction over this lawsuit on CAFA.[4]

B.    *Jurisdiction Under the Bankruptcy Statute*

The court considers next whether it has jurisdiction based on the Bankruptcy Cases and Proceedings Statute, 28 U.S.C. § 1334(b), which provides in relevant part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. § 1334(b).

Not surprisingly, no party asserts that Plaintiffs' claims against the Salkovitzes fall under this statute where the Salkovitzes are not debtors in the bankruptcy proceedings. Hilco contends,

---

[3] In its Notice of Removal and oppositions to the Motions to Remand, Hilco references Plaintiff Corbin's proof of claim with the Delaware Bankruptcy Court for unpaid wages, vacation, benefits, and associated taxes, see [Doc. No. 1], and a class action complaint in Delaware Bankruptcy Court seeking damages for Christmas Tree Shops' alleged violations of the Worker Adjustment and Retraining Notification Act ("WARN"). See WARN Class Action Compl. [Doc. No. 29-2]. These claims are made against Christmas Tree Shops and its bankruptcy estate—not Hilco or the Salkovitzes—and therefore are not a factor in this analysis. Hilco does not contend otherwise.

[4] Because the local-controversy exception prevents the court from exercising CAFA jurisdiction, the court need not determine whether CAFA's home-state controversy exception also applies.

however, that Plaintiffs' claims against Hilco arise in or are related to the case pending in the Bankruptcy Court.[5]

Civil proceedings "arising in" bankruptcy cases are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Gupta v. Quincy Medical Center, 858 F.3d 657, 662–63 (1st Cir. 2017) (quoting In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002)). "Arising in" provides jurisdiction when resolving the dispute requires interpreting an order issued by a bankruptcy court. See In re Middlesex Power Equip., 292 F.3d at 68 (dispute between purchaser of property from bankruptcy and local taxing authority about obligation to pay property taxes satisfied "arising in" jurisdiction because purchaser's defense required interpretation of bankruptcy sale order); see also In re Aramid Ent. Fund, 628 B.R. 584, 595 (Bankr. S.D.N.Y. 2021), appeal dismissed 2022 WL 118293 ("[T]he term arising in 'plainly covers' matters that require the interpretation or enforcement of orders issued during a bankruptcy case.").

Hilco contends that the present action "arises in" Christmas Tree Shops' bankruptcy case because it will necessarily require interpretation and enforcement of two orders issued by the Bankruptcy Court: the Final Store Closing Order and the Settlement Order. [Doc. No. 29-5].

As to the Settlement Order, Hilco contends that the Christmas Tree Shops bankruptcy estate has already paid out unpaid payroll to their former employees per the Settlement Order, which empowered the estate's Chapter 7 Trustee, George Miller, to do so. Miller Decl. ¶ 10 [Doc. No. 29]. In accordance with that order, Mr. Miller paid the unpaid payroll obligations of

---

[5] Hilco also cites to 28 U.S.C. § 1334(a) which provides for "original and exclusive jurisdiction of all cases under title 11[,]" except as provided under § 1334(b). Not. of Removal ¶ 10 [Doc. No. 1]; Opp. 6 [Doc. No. 28]; Opp. 6 [Doc. No. 30]. "'[C]ases under title 11' refers only to the bankruptcy petition itself," Gupta v. Quincy Med. Ctr., 858 F.3d 657, 661 (1st Cir. 2017) (alteration in original), and accordingly, § 1334(a) is not relevant here.

the Debtors (Christmas Tree Shops) to the Debtors' former employees (Plaintiffs and the putative class), which included "any remaining payments that were owed to employees for wages, salaries, vacation pay, holiday pay and sick pay earned, accrued, and approved to be paid by the Delaware Bankruptcy Court." Id. Hilco argues that to prevent the Plaintiffs and the putative class from obtaining a double recovery from the bankruptcy estate, any assessment of damages in the present case would require the interpretation and enforcement of the Settlement Order. But preventing a double recovery for lost wages would happen as a matter of course by allowing Defendants to use the amounts class members received from the bankruptcy settlement to offset any liability for lost wages in this case, without any need to interpret the Settlement Order.

As to the Final Store Closing Order, Hilco argues that the Plaintiffs' claims require interpreting two clauses in that Order. Hilco's Opp. to Salkovitzes' Mot. 10 [Doc. No. 30]. First, Hilco contends that adjudicating Plaintiff's claims would require interpreting the indemnification clause, id. at 12 [Doc. No. 30], wherein Christmas Tree Shops agreed to indemnify, defend and hold Hilco harmless from, among other things, "any liability or other claims . . . asserted by . . . any Store employees (under a collective bargaining agreement or otherwise)." [Doc. No. 2-5] at 39, § F(i)). However, Plaintiffs are correct that Hilco can bring a potential indemnification claim against the Christmas Tree Shops "as a separate adversary proceeding at any time." Pls.' Opp. to Hilco's Mot. to Transfer Venue [Doc. No. 35].

Hilco's second argument is that Plaintiffs' unjust enrichment claim, where Plaintiffs claim that Hilco has been unjustly enriched by accepting the benefit of the putative class's labor but not paying the class for that value, will require interpretation of ¶ 48 of the Final Store Closing Order, which Hilco contends immunizes Hilco from this claim. Under that provision,

Hilco "shall not be deemed to be an employer, a joint or successor employer, or a related or common employer or payor within the meaning of any legislation governing employment or labor standards, health and safety, or other statute, regulation, or rule of law or equity for any purpose whatsoever, and shall not incur any successor liability whatsoever." Although this language may *preclude* Plaintiff's unjust enrichment claim, the claim arises in a case under title 11 because resolving the underlying *dispute* requires interpreting a provision in the <u>Final Store Closing Order</u>. <u>See</u> <u>In re Middlesex Power Equip. & Marine, Inc.</u>, 292 F.3d at 68. And here, the order places that function within the purview of the Delaware Bankruptcy Court:

> This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order or the Store Closing Agreement, including, but not limited to, any claim or issue relating to any efforts by any party or person to prohibit, restrict, or in any way limit the Closing Sales in accordance with the Sale Guidelines, or any other disputes related to the Closing Sales. No parties or person shall take any action against the Debtors, the Consultant, the Closing Sales, or any Landlord, as applicable, until this Court has resolved such dispute.

<u>Id.</u> ¶ 58. Moreover, the Supreme Court recognized in <u>Travelers Indemnity Co. v. Bailey</u>, 557 U.S. 137, 151 (2009), that a bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior orders." And numerous Courts of Appeals have held that a bankruptcy court's interpretation of its own orders is "entitled to substantial deference." <u>Id.</u> at 151 n.4. Accordingly, the unjust enrichment claim against Hilco is a matter "arising in" bankruptcy and will require the interpretation of the Delaware Bankruptcy Court's <u>Final Store Closing Order</u>, which is best performed by the Delaware Bankruptcy Court. <u>See</u> <u>In re Middlesex Power Equip.</u>, 292 F.3d at 68; <u>see also</u> <u>Bailey</u>, 557 U.S. at 151 n.4. Because the present case is therefore a

matter "arising in" bankruptcy, this court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1334(b).[6]

C.    *Equitable Remand, Permissive Abstention, Transfer, and Severance*

Plaintiffs and the Salkovitzes argue that even if the court finds that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334, equitable remand and/or permissive abstention allowing the case to proceed in state court is warranted. Pls. Mem.' ISO Mot. 7 [Doc. No. 22]; Salkovitzes' Mem. ISO Mot. 14-15 [Doc. No. 17]. Defendant Hilco opposes these motions and moves to transfer venue to the United States District Court for the District of Delaware. Hilco also suggests that the court has discretion to sever the claims against the Salkovitz Defendants, remand them to state court, and transfer the claims against Hilco to the District of Delaware. Hilco Opp. to Salkovitz Mot. for Remand 18, n.9 [Doc. No. 30]. Plaintiffs and the Salkovitzes have raised no objection to severance of the claims. As the court has discretion to sever the claims, the court considers the appropriate disposition separately as to the claims against the Salokovitzes and the claims against Hilco.

1.    Claims Against Hilco

a.    Equitable remand is not warranted for claims against Hilco.

Equitable remand is authorized by 28 U.S.C. § 1452(b), which states that a court to which a claim was removed, and which has "jurisdiction of such claim or cause of action under § 1334," can remand the claim or cause of action "on any equitable ground." The factors a court should consider in deciding whether equitable remand is appropriate are: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law

---

[6] Hilco also argues that "related to" jurisdiction exists, but the court need not reach this argument where it has found "arising in" jurisdiction exists.

predominate; (3) the difficulty of applicable state law; (4) federal-state comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court. In re Santa Clara County Child Care Consortium, 223 B.R. 40, 46 (1st Cir. BAP 1998).

The unjust enrichment claim against Hilco means that this action has a significant likelihood of affecting the administration of the bankruptcy estate (factor 1) and relates strongly to the bankruptcy case (factor 5). The Final Store Closing Order issued by the Delaware Bankruptcy Court includes an indemnification clause pertaining to claims against Hilco, meaning that claims for which Hilco is liable as an employer—as it may be given the allegations supporting the unjust enrichment claim refer to the benefit of Plaintiffs' "labor," see Compl. ¶¶ 39–43—may have to be paid out from Christmas Tree Shops' bankruptcy estate. Moreover, Hilco is only a party to this case because the Delaware Bankruptcy Court approved its role as a consultant as part of Christmas Tree Shops' bankruptcy proceedings. In fact, interpreting the text of the Final Store Closing Order, which was issued by the Delaware Bankruptcy Court, is central to adjudicating the merits of the unjust enrichment claim asserted against Hilco. This court does not agree with Plaintiffs that "trying this action in Massachusetts Superior Court will not have any impact on the administration of the bankruptcy estate." See Pls.' Mem. ISO Mot. 15 [Doc. No. 22]. Therefore, the first and fifth factors do not favor equitable remand as to Hilco.

Though both claims against Hilco are brought exclusively under Massachusetts state law (factor 2), this factor has "little significance in the analysis" and consequently does not weigh heavily in favor of remand because federal judges routinely apply state law. See New England Wood Pellet, LLC v. New England Pellet, LLC, 419 B.R. 133, 145. This is particularly true here because the court does not find the claims—which hinge upon common law unjust enrichment

and negligent misrepresentation—to present novel issues of applicable state law (factor 3). <u>See</u> <u>In re Adelphia Comm'ns Corp.</u>, 285 B.R. 127, 145–46 (declining to remand a state-law contract case which presented no "unsettled questions of law"). Therefore, the second factor may mildly weigh in favor of remand but carries little weight in this analysis, particularly in light of factor 3.

Federal-state comity (factor 4) is a closer issue but does not favor remand either. This factor includes examining "the state's interest in developing its law and applying its law to its citizens" and "practical convenience and expediency." <u>New England Wood Pellet</u>, 419 B.R. at 145. Hilco is an Illinois-based corporation, but there is a strong Massachusetts "nexus to the controversy" because both named Plaintiffs and most putative class members are Massachusetts residents, and the claims arise out of events related to Hilco's activities in Massachusetts— namely Hilco's alleged representations to employees located in Massachusetts and any unjust enrichment Hilco may have received as a result of Plaintiffs' labor in Massachusetts. However, the Delaware Bankruptcy Court has spent significantly more time dealing with issues arising in Christmas Tree Shop's bankruptcy estate, the petition for which *predated* Plaintiffs' complaint commencing this action—unlike the case in <u>New England Wood Pellet</u>, where the defendant filed for bankruptcy protection *after* the plaintiff had already filed its complaint. <u>See</u> <u>id.</u> at 139. And, as previously discussed, the decisions and orders of the Delaware Bankruptcy Court are central to the unjust enrichment claim here. Therefore, this court finds that remand of the claims against Hilco is not in the interest of practical judicial efficiency or expediency.

As to factor 7, Plaintiffs argue that transfer of venue to Delaware would pose an undue burden for litigants. Pls.' Mem. ISO Mot. 15 [Doc. No. 22]. Although the inquiry for this factor is normally limited to prejudice to parties resulting from removal to *this* court from state court, as a practical matter, where jurisdiction here is based on the bankruptcy proceeding, rejecting

equitable remand may well result in greater inconvenience to the Plaintiffs. Nonetheless, the court does not find that this inconvenience is such that it would "prejudice" Plaintiffs. Accordingly, the court finds the seventh factor to be neutral.

Therefore, the first and fifth factors strongly support maintaining federal jurisdiction over the claims against Hilco due to the unjust enrichment claim. The remaining factors either do not favor remand or, if they do, do not carry much weight. Therefore, this court finds equitable remand of the claims against Hilco to state court unwarranted.

> b.   Permissive abstention is not warranted for claims against Hilco.

Plaintiffs also argue that the permissive abstention factors weigh in their favor. Permissive abstention is authorized by 28 U.S.C. § 1334(c), which states that a district court may "in the interest of justice, or in the interest of comity with State courts or respect for State law" abstain from hearing a particular proceeding arising in or related to a case under title 11. Although "[t]he First Circuit has never enumerated precise factors that a court must consider when determining whether the interest of justice, comity, or respect for state law favors abstention . . . it has expressly mentioned the following factors that other courts have considered:

> (1) the extent to which state law issues predominate over bankruptcy issues,
> (2) the presence of a related proceeding commenced in state court or other nonbankruptcy court, and
> (3) the likelihood that the commence of the proceeding in bankruptcy court involves forum shopping by one of the parties.

Haber v. Massey, 904 F.Supp. 2d 136, 147 (D. Mass. 2012) (citing In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 69).

As to the first factor, state law issues do predominate over bankruptcy issues. As to the second factor (the presence of a related state proceeding), the court is aware of no related state court proceedings (although if the case is severed and the claims against the Salkovitzes are

remanded, there will be a related state court proceedings). As to the third factor, there is no evidence of forum shopping by HILCO here. To the contrary, HILCO's involvement in this action derives from the bankruptcy proceedings. In light of that role, and the need to interpret a bankruptcy court order, the court cannot find that the interest of justice is served by remanding the claims against Hilco.

Therefore, this court finds that permissive remand is also not warranted for the claims against Hilco.

c.      Transfer of Venue

As to venue, 28 U.S.C. § 1412 authorizes a district court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Authorities are divided on whether § 1412 extends to "actions 'related to cases under Title 11,' or only actions 'under Title 11' or 'arising in cases under title 11.'" New England Wood Pellet, LLC v. New England Pellet, LLC, 419 B.R. 133, 148 (Bankr. D.N.H. 2009); City of Liberal, Kan. v. Trailmobile Corp., 316 B.R. 358, 361–62 (D. Kan. 2004) (collecting cases). This court only concludes that § 1412 applies here—a proceeding "arising in" a case *under* Title 11. See supra II.B.1.[7]

---

[7] Hilco also seeks transfer under 28 U.S.C. § 1404(a), which allows a district court to transfer "any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." Here, Hilco has not demonstrated how this action could have been originally brought in the District of Delaware other than under 28 U.S.C. § 1412. Venue in the District of Delaware is not appropriate under the general venue statute, 28 U.S.C. § 1391, where no Defendant is a citizen of Delaware; no substantial part of the events giving rise to the Plaintiffs' claim occurred in Delaware; and there is no property in Delaware that is the subject of the action. Therefore, the court finds that transfer is not permissible under 28 U.S.C. § 1404. Analyzing the case under § 1412 rather than § 1404, however, is of little import, where the decision to proceed under § 1412 as opposed to § 1404 does not alter this court's analysis, which "is essentially the same under each," New England Wood Pellet, 419 B.R. at 148; see also In re Lehman Brothers Holdings Inc., 594 B.R. 33, 50 (S.D.N.Y. 2018) ("Whether this Court conducts its analysis . . . by applying section 1412 or . . .

Because § 1412 is "written in the disjunctive, making transfer of venue appropriate either in the interest of justice or for the convenience of the parties, . . . this statutory provision creates two distinct analytical bases upon which transfer of venue may be grounded." In re Cosmogony II, Inc., 2022 WL 14929826, *4 (Bankr. D.P.R. Oct. 25, 2022) (quoting In re Hermitage Inn Real Estate Holding Co., LLC, 2019 WL 2536075, *3 (Bankr. D. Vt. 2019)). The decision whether to grant a motion to transfer venue is within the sound discretion of this court. In re N. Parent, Inc., 221 B.R. 609, 630-31 (Bankr. D. Mass. 1998) (applying 28 U.S.C. § 1412); Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (applying 28 U.S.C. § 1404(a)). In deciding a motion to transfer, a court may consider factors such as "any connection between the forum and the issues . . . , the law to be applied . . . , and the state or public interests at stake." First State Ins. Company v. XTRA Corp., 583 F.Supp.3d 313, 318 (D. Mass. 2022).

Generally, there is a "strong presumption in favor of the plaintiff's choice of forum." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000). However, when a case has been removed to district court pursuant to § 1452, as in this action, there is also a "strong presumption in favor of placing venue in the district where the bankruptcy proceedings are pending." New England Wood Pellet, LLC v. New England Pellet, LLC, 419 B.R. 133, 149 (Bankr. D.N.H. 2009). This is known as the "home court presumption," and it embodies a general rule "that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction, because speedy and economic administration of cases is a paramount consideration in the bankruptcy process." Id. at 151 (quoting In re Vital Link Lodi, Inc., 240 B.R. 15, 18 (Bankr. W.D. Mo. 1999)).

---

1404(a), is largely inconsequential" because "the analyses under section 1404 and section 1412 are substantially similar." (citations omitted)).

This court agrees with Plaintiffs that granting Hilco's motion to transfer venue would pose for them greater inconvenience with respect to travel time and cost. Both named Plaintiffs and most putative class members are Massachusetts citizens. This factor merits significant weight because of the presumption that favors Plaintiffs' choice of forum. There is also a public interest in adjudicating the matter locally because the claims against Hilco are related both to stores *and* to employees located in Massachusetts. Pls.' Opp. to Hilco's Mot. to Transfer 7 [Doc. No. 35]. However, Plaintiffs' contention that "Hilco will be equally inconvenienced litigating this matter in Massachusetts as it will in Delaware" is incorrect. Id. at 10. Hilco is an Illinois corporation, but it is already a party to the bankruptcy proceedings before the Delaware Bankruptcy Court, so litigating the case in the District of Delaware would be more convenient for Hilco than litigating in Massachusetts.

The court finds that the "home court presumption" applies here and outweighs the other factors. See, e.g., Orthodontic Ctrs. of Tex., Inc. v. Corwin, 2007 WL 173220, at *1 (S.D. Tex. Jan. 18, 2007); Hohl v. Bastian, 279 B.R. 165, 177–78 (W.D. Pa. 2002); Alliant Health Mgmt. Servs., Inc. v. Vital Link Private Duty Lodi, Inc. (In re Vital Link Lodi, Inc.), 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999). Moreover, Hilco's involvement with the events at issue arose directly and exclusively from Christmas Tree Shops' bankruptcy proceedings, which are ongoing in the Delaware Bankruptcy Court. Further, Hilco's relationship with Christmas Tree Shops, as well as the terms of its responsibilities and liability, including indemnification, were laid out by the Final Store Closing Order issued by the Delaware Bankruptcy Court. As discussed above, Plaintiffs' unjust enrichment claim against Hilco implicates ¶ 48 of the Final Store Closing Order. And, as also discussed, interpretation of the order is within the purview of the Delaware Bankruptcy

Court, and federal circuit courts around the country give "substantial deference" to a bankruptcy court's interpretation of its own orders. Bailey, 557 U.S. at 151 n.4.

Therefore, this court finds that in the interest of judicial efficiency, the District of Delaware is the correct venue for adjudicating Plaintiffs' claims against Hilco.

    2.   Claims Against the Salkovitzes

        a.   Equitable remand is warranted for claims against the Salkovitzes.

Unlike the unjust enrichment claim against Hilco, none of the three claims against the Salkovitzes are connected to the orders of the Delaware Bankruptcy Court at all (factor 1 and 5 for equitable remand). Therefore, where those factors counseled in favor of federal jurisdiction over the claims against Hilco, they favor remand for the claims against the Salkovitzes. As with the Hilco claims, state law predominates (factor 2)—including a Massachusetts Wage Act violation that is only alleged against the Salkovitzes—though it would not be particularly difficult to apply the relevant state law here (factor 3). Federal-state comity strongly favors remand here because Massachusetts has an interest in applying its wage and other laws to the Salkovitzes, who are Massachusetts citizens (factor 4).

As to the sixth factor (the existence of a right to a jury trial), the Salkovitzes assert that they will not consent to a jury trial in the Delaware Bankruptcy Court. Salkovitzes' Mem. ISO Mot. 17 [Doc. No. 17]. Without such consent, the transfer to the Delaware District Court would result in litigating the case in a distant forum without any advantages relating to the bankruptcy proceeding. Hence, the sixth factor also favors remand.

Both the Plaintiffs and the Salkovitzes argue about the prejudice of having to litigate this action *if it were transferred to Delaware*. See Mem. ISO Mot. 16 [Doc. No. 27]. As noted above, the inquiry for this factor is normally focused on the prejudice to parties resulting from removal

to *this* court from state court. But where jurisdiction here is based on the bankruptcy proceeding (such that the case would likely be transferred to the District of Delaware) and none of the claims against the Salkovitzes arise in or are related to cases under title 11, denying an equitable remand would "prejudice" Plaintiffs.

Unlike with the claims against Hilco, none of the seven factors strongly warrant maintaining federal jurisdiction over the claims against the Salkovitzes. Several of the factors (federal-state comity, predominance of state law, and prejudice to non-removing parties) favor remand to state court. Therefore, this court finds that equitable remand with respect to the claims against the Salkovitzes is warranted. Because this court finds that equitable remand of those claims is warranted, it need not separately consider whether permissive abstention would also have been warranted.

Accordingly, finding that equitable remand is warranted as to the Plaintiffs' claims against the Salkovitzes, but is not warranted as to Plaintiffs' claims against Hilco, the court considers severance of the claims.

b.    Severing the claims against the Salkovitzes

This court retains its bankruptcy jurisdiction over the present case based on the unjust enrichment claim against Hilco and is not required to abstain. However, in the interest of judicial efficiency, comity, and justice for all parties, this court chooses to sever the claims against the Salkovitzes and remand those claims to Suffolk Superior Court. Hilco does not oppose the severing of the action and remand of the claims against the Salkovitzes. Hilco's Opp. to Salkovitz Mot. 18 n. 9 [Doc. No. 30].

In Massachusetts, a plaintiff employee of a corporation has an independent right to seek damages from the corporation's employees. M. G. L. ch. 149, § 148; <u>Cook v. Patient Edu, LLC</u>,

465 Mass. 548, 553 (noting that the Massachusetts Wage Act imposes liability on any officer or agent of the corporation who "controls, directs, and participates to a substantial degree in formulation and determining policy of a corporation" for violations of the Wage Act against their employees) (quoting Wiedmann v. The Bradford Group, Inc., 444 Mass. 698 (2005)). Marc Salkovitz was the Executive Chairman of Christmas Tree Shops during the relevant time period for these claims. Marc Salkovitz Decl. ¶ 2 [Doc. No. 18]. Pam Salkovitz was the Chief Executive Officer of Christmas Tree Shops at the same time. Pam Salkovitz Decl. ¶ 2 [Doc. No. 19]. Both positions constituted being officers of Christmas Tree Shops, controlling, directing, and participating in determining policy for the corporation.

Here, the Plaintiffs have a right to seek damages from the Salkovitzes for their alleged violations of the Massachusetts Wage Act. Severing their claims against the Salkovitzes from their claims against Hilco allows this court to remand the claims against the Salkovitzes back to Suffolk Superior Court. Doing so does not prejudice either the Plaintiffs or the Salkovitzes, instead placing both parties in the proper forum to recognize their individual rights and liabilities under state law, which is at the heart of Plaintiffs' claims against the Salkovitzes.

Accordingly, the court will sever and equitably remand the claims against the Salkovitzes.

### III.   Conclusion

For the foregoing reasons, this court SEVERS the claims against the Salkovitzes from the claims against Hilco. The Motions to Remand [Doc. Nos. 16, 21] are GRANTED as to Plaintiffs' claims against the Salkovitzes and DENIED as to Plaintiffs' claims against Hilco. Hilco's Motion to Transfer Venue [Doc. No. 11] to the District of Delaware is GRANTED as to the claims against Hilco. No sooner than 30 days following this order, the clerk shall remand the

case as to the claims against the Salkovitzes to the Massachusetts Superior Court, Plymouth

County, in accordance with Local Rule 81.1, and shall transfer the case as to the claims against

Hilco to the United States District Court for the District of Delaware.

     IT IS SO ORDERED.

November 1, 2024                            /s/     Indira Talwani
                                           United States District Judge